1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

* * *

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )        Case No.: 2:11-cr-0058-GMN-CWH
                                )
vs.                             )        **Order & Report and Recommendation**
                                )
PHILLIP SMITH,                  )        (Motion to Suppress #62)
DEVELLE MERRITTE                )
                                )
            Defendant.          )
_____ )

This matter was referred to the undersigned Magistrate Judge on Defendant Phillip Smith's Motion to Suppress (#62), filed on June 11, 2012; Defendant Develle Merritte's Motion for Joinder (#63), filed June 11, 2012; the Government's Response (#65), filed June 28, 2012; and Defendant's Reply (#66), filed July 2, 2012. The Court conducted an evidentiary hearing in this matter on July 3, 2012.

### BACKGROUND

Defendants Phillip Smith and Develle Merritte ("Defendants") are charged by way of a Superceding Criminal Indictment with one count of Conspiracy to Interfere with Commerce by Armed Robbery in violation of Title 18, United States Code, Section 1951; thirteen counts of Use of a Firearm During and in Relation to a Crime of Violence in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 924(c)(2); and twelve counts of Interference with Commerce by Robbery in violation of Title 18, United States code, Section 1951. (#51).

In early 2010, the Las Vegas Metropolitan Police Department ("Metro") was investigating a series of robberies that occurred at several businesses located in Las Vegas. Using both witnesses and surveillance cameras at the businesses that had been robbed, Metro identified a specific Honda

1   Accord as a vehicle involved in the robberies.  The investigation revealed that Defendant Smith and

2   the person listed on the vehicle's registration were friends and Defendant Smith had driven the

3   vehicle in the past.  Further investigation revealed that Defendant Smith likely used several cellular

4   telephones that were registered to a relative.  Based on that information, a tracking warrant was

5   issued on April 29, 2012, by a Las Vegas Justice Court Judge for the cellular telephone numbers.

6   Utilizing the tracking warrant, the Metro detectives were able to locate the vehicle that was

7   allegedly used in the robberies.

8        On April 30, 2012, Metro Detectives Hart and Theobold installed a self-powered, self-

9   adhering Global Positioning System ("GPS") device under the rear bumper of the vehicle.

10  Placement of the device was approved through Metro's internal administrative procedures.  The

11  detectives did not obtain a warrant authorizing installation of the device.  The device was installed

12  while the vehicle was parked near a public school on the side of the public street, in the vicinity of

13  Hollywood Boulevard and American Beauty Street in Las Vegas.   The device provided real-time

14  information regarding the vehicle's location, direction, and speed.  It was monitored on a daily

15  basis by Detectives Hart and Theobold until Defendants were arrested on May 18, 2010.

16  Additionally, the detectives conducted physical surveillance on the vehicle.  During that physical

17  surveillance, the detectives observed Defendant Merritte in the vehicle on seven or eight separate

18  occasions.  On one occasion, Defendant Merritte was observed driving the vehicle while Defendant

19  Smith followed on a motorcycle.  Other individuals were also seen riding in the vehicle during the

20  surveillance period.

21       On May 18, 2010, Defendants were arrested after a home invasion in which an individual

22  was allegedly shot.  The arrest occurred after a high-speed pursuit that ended when the vehicle

23  collided with another vehicle in Las Vegas.  Defendant Smith was driving the vehicle during the

24  high-speed pursuit.  Defendant Merritte, who was also in the vehicle on that day, was arrested in a

25  neighborhood where he fled during the pursuit.  Consequently, Defendant Merritte was neither in

26  the vehicle at the time of the collision nor detained at the scene of the crash.

27       Citing *United States v. Jones*, — U.S. —, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012),

28  Defendant Smith requests that the Court suppress all evidence and information obtained as a result

2

1   of the GPS installation and subsequent surveillance that occurred during the period of April 30,

2   2010, until May 18, 2010.  Evidence requested to be suppressed includes any observations by law

3   enforcement officers indicating that Defendant Smith was reconnoitering potential locations for

4   additional criminal activity.  Defendant Smith also requests suppression of all the physical evidence

5   seized from the vehicle on May 18, 2010, as fruits of the illegal installation of the GPS device.

6   Defendant Merritte has filed a joinder to the motion.  (#63).

7       In response, the Government argues that Defendant Merritte lacks standing to challenge

8   both the attachment and use of the GPS tracking device on the vehicle.  Citing this Court's recent

9   decision in *United States v. Fata*, 2012 WL 1715496, the Government also argues that, even

10  assuming standing, the "good faith" doctrine prevents the application of *Jones* because law

11  enforcement officials were relying on binding appellate precedent.  Lastly, the Government argues

12  that regardless of the legality of the installation of the GPS device, the evidence would have been

13  inevitably discovered because of the existing tracking warrant on the cellular telephones used by

14  Defendant Smith.

15      In reply, Defendant Smith argues that the Government has failed to provide sufficiently

16  detailed documentation that the law enforcement officers were acting in "good faith" when they

17  placed the GPS device.  He also argues that the Government cannot rely on the inevitable discovery

18  doctrine because it was not until after the arrest that Metro was able to determine that the

19  assumptions outlined in the cell phone tracking warrant were correct.

## DISCUSSION

### 1.  Defendant Merritte's Standing

22      As a threshold matter, the Court addresses whether Defendant Merritte has standing to

23  contest the attachment or use of the GPS device.  The Court notes that the motion to suppress is

24  based exclusively on the claim that the Metro detectives violated the Fourth Amendment when they

25  placed the GPS device on the vehicle and used the device to track the vehicle.

26      It is axiomatic that an individual seeking to exclude evidence allegedly obtained in violation

27  of the Fourth Amendment must have standing to challenge the illegal conduct that led to the

28  discovery of the evidence.  *United States v. Pulliam*, 405 F.3d 782, 785-786 (9th Cir. 2005) (citing

1    *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)).  The proponent of a motion to suppress has the burden

2    of establishing that his Fourth Amendment rights were violated by the challenged search or seizure.

3    *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005) (citation omitted).   "To invoke the

4    protections of the Fourth Amendment, a person must show he had a 'a legitimate expectation of

5    privacy.'" *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000).  To establish a legitimate

6    expectation of privacy a person must show (1) a subjective expectation of privacy (2) that society is

7    prepared to recognize as objectively reasonable.  *United States v. Caymen*, 404 F.3d 1196, 1199

8    (9th Cir. 2005).  "A person who is aggrieved by an illegal search and seizure only through the

9    introduction of damaging evidence secured by a search of a third person's premises or property has

10   not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134.

11        As a general matter, a person does not possess a reasonable expectation of privacy in a

12   vehicle in which he has no lawful ownership or possessory interest.  *Id.*, 439 U.S. 148-49 (normally

13   a passenger who asserts neither a possessory nor property interest in a vehicle would not have a

14   legitimate expectation of privacy in the vehicle); *see also United States v. Thomas*, 447 F.3d 1191,

15   1197 (9th Cir. 2006) (citations omitted).  Even so, "possessory or ownership interests" are not

16   narrowly defined.  *Id.*  "A reasonable expectation of privacy may be shown 'either by reference to

17   concepts of real or personal property law or to understandings that are recognized and permitted by

18   society.'" *Id.* (citations omitted).  Thus, even though a defendant may lack an ownership interest, a

19   defendant may still have standing to challenge the search upon showing of "joint control" or

20   "common authority."  *Id.* at 1198.

21        In *Thomas*, the Ninth Circuit stated that "[c]ommon authority rests 'on mutual use of the

22   property by persons generally having joint access or control for most purposes.'" *Id.* (citation

23   omitted).  For example, in *United States v. Portillo*, 633 F2d 1313 (1980), the Ninth Circuit held

24   that a defendant had standing to challenge the search of a friend's car because the owner had given

25   him permission to use the vehicle and the defendant was driving the vehicle at the time of the stop.

26   *Portillo*, 633 F.2d at 1317.  However, citing the Supreme Court's decision in *Rakas*, the court in

27   *Portillo* refused to extend that interest to a passenger in the vehicle because the passenger could not

28   assert a property or possessory interest in the vehicle.  *Id.*

4

1    There is nothing in the record to support the claim that Defendant Merritte had an

2  ownership or possessory interest in the vehicle.  Defendant Merritte does not own the vehicle.  No

3  evidence has been submitted showing that Defendant Merritte was operating the vehicle with

4  permission of the rightful owner.  Nor is there any evidence that he was, or ever had, operated the

5  vehicle with permission of Defendant Smith.  It is true that on one occasion during the detectives'

6  physical surveillance, Defendant Merritte was observed driving the vehicle.  On the other hand,

7  there is nothing demonstrating that Defendant Merritte drove with the permission or knowledge of

8  either the true owner or Defendant Smith, who appears to have had permission to use the vehicle.

9  The evidence shows that Defendant Merritte was frequently a passenger in the vehicle during the

10  time that the GPS device was attached to the vehicle.  As a passenger with no possessory interest in

11  the car Defendant Smith was driving, Defendant Merritte "'has no reasonable expectation of

12  privacy in a car that would permit [his] Fourth Amendment challenge to a search of the car.'"

13  *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000) (alteration in original) (citations

14  omitted).

15    Because Defendant Merritte has not carried his burden to show that he has Fourth

16  Amendment standing to challenge the placement and use of the GPS device on the vehicle, his

17  motion for joinder is denied.

18    **2.  GPS Device**

19    The installation of a GPS device on a vehicle constitutes a search within the meaning of the

20  Fourth Amendment.  *United States v. Jones*, — U.S. —, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012)

21  ("[T]he Government's installation of a GPS device on a target's vehicle, and its use of that device

22  to monitor the vehicle's movements, constitutes a search" within the meaning of the Fourth

23  Amendment.).  Unquestionably, the warrantless installation of a GPS device on a vehicle violates

24  the Fourth Amendment.  Here, as in *Jones*, the device was used to gather information alerting law

25  enforcement personnel of Defendants' travel and whereabouts in Las Vegas during the period of

26  April 30, 2010 until May 18, 2010.  The device was also used to assist in locating and

27  apprehending the vehicle on May 18, 2010.  There is no question that placement of the GPS device

28  violated the Fourth Amendment in this case.  However, violation of a constitutional right does not

automatically trigger the exclusionary rule.

### 3. Application of *Davis* – The Good Faith Exception

The Supreme Court has held that the exclusionary rule "is a 'prudential' doctrine[] created by this Court to 'compel respect for the constitutional guaranty.'" *See Davis v. United States*, — U.S. —, 131 S. Ct. 2419, 2426, 180 L.Ed.2d 285 (2011) (citing *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363 (1998) and *Elkins v. United States*, 364 U.S. 206, 217 (1960)). The sole purpose of the exclusionary rule "is to deter future Fourth Amendment violations." *Davis*, 131 S. Ct. at 2426 (citations omitted). The Supreme Court has "limited the [exclusionary] rule's operation to situations in which this purpose is 'thought most efficaciously served.'" *Id.* (citing *United States v. Calandra*, 414 U.S. 338, 348 (1974)). "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Davis*, 131 S. Ct. at 2427 (citation omitted).

In *Davis*, the Supreme Court addressed whether the exclusionary rule should apply when law enforcement officers act in objectively reasonable reliance on binding judicial precedent that is overruled after that objectively reasonable act. The facts of *Davis* are generally analogous with the present case. In *Davis*, the defendant was convicted of being a felon in possession of a weapon. In compliance with existing Eleventh Circuit precedent, the weapon was seized during a vehicle search conducted incident to Davis' arrest and after he was secured in a police vehicle. While Davis' appeal was pending, the Supreme Court issued its decision in *Arizona v. Gant*, 556 U.S. 332 (2009). In light of *Gant*, the search of Davis made incident to his arrest violated his Fourth Amendment rights.

However, the Supreme Court, in applying its "good faith" line of cases, beginning with *United States v. Leon*, 468 U.S. 897 (1980), held that the "harsh sanction of exclusion should not be applied to deter objectively reasonable law enforcement activity." *Davis*, 131 S.Ct. 2429. Specifically, the Court held that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Id.* The only deterrent of excluding evidence obtained in instances where officers conduct themselves in conformity with binding appellate precedent, even if later found to be unconstitutional, is "to discourage the officer

6

1  from doing his duty." *Id*. (citations omitted).

2         In *United States v. Pineda-Moreno*, 591 F.3d 1212 (9th Cir. 2010), the Ninth Circuit held

3  that the placement of a GPS device in a private driveway, and subsequent monitoring of the device,

4  did not violate the Fourth Amendment.  Here, Metro detectives placed a GPS device on

5  Defendants' vehicle and used it in a manner nearly indistinguishable from the facts in *Pineda-*

6  *Moreno*.  Here, the device was of similar technological capability as in *Pineda-Moreno*.  It was

7  installed while the vehicle was parked in a public street, a place where the expectation of privacy is

8  less than in a private driveway.  And, like in *Pineda-Moreno*, the device alerted law enforcement to

9  Defendants' location that ultimately lead to their arrest and the subsequent charges.

10        Based on the foregoing, the Court finds that the installation and use of the GPS device in

11  this case was lawful under *Pineda-Moreno*.  Thus, consistent with the Supreme Court's decision in

12  *Davis*, the Court finds that the purpose of the exclusionary rule would not be served in this instance

13  by suppression based solely on placement of the GPS device.  Placement of the GPS device and the

14  subsequent monitoring were done in reasonable reliance on then binding appellate precedent as

15  announced in *Pineda-Moreno*.  *See also United States v. Aguilar*, 2012 WL 1600276 (D. Idaho

16  May 7, 2012) (while defendant's Fourth Amendment rights were violated with the use of

17  warrantless GPS, exclusionary rule does not apply); *United States v. Heath* 2012 WL 1574123 (D.

18  Mont. May 3, 2012) (same).

19        Based on the foregoing and good cause appearing therefore,

20                                        **ORDER**

21        **IT IS HEREBY ORDERED** that Defendant Merritte's Motion for Joinder to Defendant

22  Smith's Motion to Suppress Evidence (#63) is **denied**.

23                                   **RECOMMENDATION**

24        IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that the

25  Defendant's Motion to Suppress (#62) be **denied.**

26

27                                       **NOTICE**

28        Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be**

                                            7

**in writing and filed with the Clerk of the Court on or before .** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 24th day of July, 2012.

_____
C.W. Hoffman, Jr.
United States Magistrate Judge