# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No.: 2:11-cr-0058-GMN-CWH |
| vs. | **ORDER AND FINDINGS AND RECOMMENDATION** |
| PHILLIP SMITH, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendant Develle Rural Merritte's Motion in Limine to Preclude Fed. R. Evid. 404(b) Evidence (#80), filed on October 12, 2012. The Court also considered the Government's Response (#82), filed on October 29, 2012. Defendant Phillip Smith filed a Motion for Joinder (#85), filed on February 12, 2013.

## BACKGROUND

From January 18, 2010 until May 15, 2010, the Las Vegas Metropolitan Police Department ("Metro") was investigating a series of robberies that occurred at several businesses located in Las Vegas. The clothing, type of business targeted, and the modes of operations were consistent throughout the series of these robberies. Metro referred to them as the "Bandana" robberies because the robbers used bandanas to conceal their identities. They targeted various stores and restaurants, including video game stores, Asian and Mexican restaurants, and sandwich shops. Also, a handgun was brandished during the robberies.

Metro identified a specific Honda Accord as the vehicle involved in the robberies based on information from witnesses and surveillance cameras at the businesses that were robbed. Using the partial license plate number captured on the video and the description of the vehicle, investigators were able to tie the vehicle to Defendant Phillip Smith ("Smith"). The vehicle was targeted for surveillance through the use of a Global Positioning System tracking device. This tracking system was used daily from April 30, 2010 until May 18, 2010 when Defendants were arrested.

Additionally, the detectives conducted physical surveillance on the vehicle . During that physical surveillance, the detectives observed Defendant Develle Rural Merritte ("Merritte") in the vehicle on seven or eight separate occasions. For example, the detectives saw Smith pick up Merritte at an apartment complex on West Charleston Avenue in Las Vegas. They observed actions by Smith and Merritte that they characterized as "capering" of several businesses, including three small restaurants. Smith and Merritte allegedly drove through the parking lots of the businesses several times and drove though the neighborhoods directly behind the businesses. On one occasion, Defendants parked in the neighborhood directly west of a small Thai restaurant and sat in the car with the lights out for twenty minutes.

On May 18, 2010, the detectives observed Defendants driving into the residential neighborhood in the area of 5200 Alpine Place in Las Vegas. While investigators were nearby, a report of a residential robbery with shots fired was made and investigators observed Defendants fleeing the area in the Honda at a high rate of speed. They followed Defendants and called in patrol units. Defendants attempted to flee away from the patrol units, began throwing items of clothing out the window, and then Merritte jumped out of the passenger side of the car. Officers apprehended Merritte shortly thereafter and continued to follow Smith until he crashed the Honda.

At the scene of the crash, various items including clothing, cell phones, I-Pods and video games which had been reportedly taken during the series of robberies were recovered.[1] When officers arrested Merritte, he possessed a Kel Tec P-32 handgun, the same gun that was stolen during one of the robberies. A spent cartridge from the Kel Tec was discovered at the scene of the home invasion at 5200 Alpine where the home owner had been shot. Credit and ATM cards were also recovered from Merritte at the time of his arrest, and those cards led officers to a second home

---

[1] For example, recovered were a Kel Tec P-32, the same gun that was stolen from the robbery alleged in Counts 5 and 6, a cell phone and I-Pod taken during the robbery alleged in Counts 7 and 8, a cell phone taken during the robbery alleged in Counts 11 and 12, a video game taken during the robbery alleged in Counts 13 and 14, a cell phone taken during the robbery alleged in Counts 17 and 18, a cell phone taken during the robbery alleged in Counts 19 and 20, and a visor taken during the robbery alleged in Counts 21 and 22.

1  invasion which had occurred earlier that day, on North Major Avenue, Henderson, Nevada.  Shortly
2  after that home invasion, a surveillance video captured Merritte using the stolen ATM card to
3  withdraw money, as well as an image of the Honda.
4  　　　　On February 15, 2011, a Grand Jury returned an indictment against the Defendants.  On
5  May 1, 2012, a Superseding Criminal Indictment was filed against both defendants, containing
6  allegations of violation of Title18 U.S.C. §§ 1951 and 1952, Conspiracy to Interfere with
7  Commerce by Armed Robbery, eleven counts of Interference with Commerce by Armed Robbery,
8  and twelve counts alleging the Use of a Firearm in Relation to a Crime of Violence, in violation of
9  Title 18 U.S.C. § 924(c).
10 　　　　In the instant Motion, Defendants request that this Court limit the introduction of Fed. R.
11 Evid. 404(b) evidence against them related to the capering of businesses, a home invasion on North
12 Major Avenue, Henderson, Nevada, a home invasion on Alpine Place, Las Vegas, Nevada, and an
13 alleged flight from law enforcement on May 18, 2010.  Defendants argue that such evidence of
14 prior bad acts are not relevant and should be excluded pursuant to Fed. R. Evid. 403 and 404(b) as
15 it has limited probative value and is unduly prejudicial.
16 　　　　In response, the Government argues that Defendants' capering of businesses in the Honda
17 Accord is admissible evidence of intent, preparation, and planning under Fed. R. Evid. 404(b).[2]
18 Further, the Government contends that the home invasions are relevant to the charged crimes
19 because they prove identity, knowledge, opportunity, and absence of mistake or accident.
20 Similarly, the Government alleges that evidence of Defendants' flight is admissible as evidence of
21 consciousness of guilt.  Finally, the Government argues that Defendants failed to demonstrate that
22 such evidence is unfairly prejudicial or needlessly cumulative.

---

[2] The Government indicates that it will not elicit the fact that Merritte shot the victim of the home invasion.  In response to Merritte's contention that the photographs from the scene of Alpine Place home invasion should be excluded, the Government agrees, and will not use the photographs.  Additionally, the Government does not intend to introduce a video from the show "COPS" filmed prior to the arrest of Defendants.  Accordingly, these items of evidence will not be addressed with further analysis in this order.

# DISCUSSION

### A.   Relevant and Admissible Evidence

Fed. R. Evid. 401 defines "relevant evidence" as evidence having "any tendency to make the existence of a fact more probable or less probable than it would be without the evidence" and that fact is of consequence in determining the action. Fed. R. Evid. 401. Further, Fed. R. Evid. Rule 402 states, "Irrelevant evidence is not admissible." Fed. R. Evid. 402. However, even if evidence may be relevant, Fed. R. Evid. 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with character." Fed. R. Evid. 404(b)(1).[3] Rule 404(b) continues with the caveat that such evidence may be admitted for other purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *see also Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue."); *see also, United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc) (Rule 404(b) "is a rule of inclusion—not exclusion.").

Fed. R. Evid. 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Unfair prejudice refers to "the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (citations omitted).

Accordingly, the Court will employ the following framework in conducting its analysis of whether the Rule 404(b) evidence at issue should be excluded. The Government must establish that such evidence "(1) tends to prove a material point; (2) is not too remote in time; (3) is based

---

[3] The limitations of Rule 404(b) are "designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced the defendant is a bad man deserving of punishment." *United States v. Hill*, 953 F.2d 452, 457 (9th Cir. 1991).

4

upon sufficient evidence; and, (4) in some cases, is similar to the offense charged." *United States v. Banks*, 514 F.3d 959 (9th Cir. 2008) (*quoting United States v. Robertson*, 15 F.3d 862, 870 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 669 (1995)).  Once the Court finds that the proffered evidence satisfies these requirements, it must continue its analysis to determine if the evidence's "probative value is substantially outweighed by the danger of unfair prejudice." *Id*.

### B. Evidence of "Capering"

Merritte contends that the government witnesses are going to speculate that Defendants were "capering" businesses when they drove through parking lots of businesses and parked in front of a Thai restaurant.  He claims that there is no independent evidence to substantiate these allegations and that none of the businesses which were alleged to have been "capered" were ever robbed.  Without more, Merritte argues that this evidence cannot prove any material element of the crimes charged and therefore has no probative value.  Moreover, Merritte claims that allegations of capering are unduly prejudicial as a jury may infer guilt based on the allegations themselves and that this evidence should therefore be excluded.  In contrast, the Government argues that Defendants' capering of businesses is strong evidence of intent, preparation, and planning under Fed. R. Evid. 404(b) and is not unfairly prejudicial.

Using the Fed. R. Evid. 404(b) framework, the Court finds that the proposed evidence satisfies the four-part test.  First, the proposed evidence tends to prove a material point.  To prove a conspiracy, the Government must show (1) an agreement, (2) to engage in criminal activity, and (3) one or more overt acts in furtherance of the conspiracy.  *United States v. Hernandez*, 876 F.2d 774, 777 (9th Cir. 1989).  Accordingly, the proposed evidence goes to prove that the defendants acted together, drove in a Honda, and did so in shopping areas with stores like the ones which were robbed.  Second, the alleged "capering" activity occurred around the same time period as the Bandana robberies, and is therefore not remote in time.  Third, the evidence is based upon the direct observations of law enforcement officers.  Fourth, the evidence relates to circumstances that made it appear that Defendants were planning a robbery similar to other robberies which had

occurred.⁴  Therefore, the Court finds that evidence of "capering" proves a material point in this conspiracy count, which is that Defendants planned and prepared to commit robberies and the *modus operandi* of the capering was consistent with the Bandana robberies.

Even though the evidence is admissible under Rule 404(b), it may nonetheless be excluded under Fed. R. Evid. 403's balancing test, which weighs the "probative value" of the evidence against the "danger of unfair prejudice." *United States v. Cruz-Garcia*, 344 F.3d 951, 956 (9th Cir. 2003).  The decision to admit potentially prejudicial evidence under Rule 403 is 'committed to the sound discretion of the trial court.'" *Boyd v. City & Cnty. of S.F.*, 576 F.3d 938, 948 (9th Cir. 2009) (citations omitted).  Here, the point proved is an important one on the conspiracy charge – that Defendants undertook a course of conduct to prepare to commit robberies.  The characterization of the activity as "capering" is a matter of argument that counsel for both sides can undertake, and which the jury can determine.  Nevertheless, at this point, the Court finds that the proposed capering evidence is not unfairly prejudicial and therefore should not be excluded.

### C.  Evidence of Two Home Invasions and Flight

Merritte contends that the Court should preclude evidence of two home invasions and the alleged flight from law enforcement officers on May 18, 2010.  He argues that they are not connected with the robberies and conspiracy alleged in the indictment.  Merritte also asserts that even if he fled from law enforcement officers on May 18, 2010, there is no connection between that alleged flight and the pending federal charges.⁵  According to the Government, there are no witnesses who can identify either Merritte or Smith as being the perpetrator of any of the indicted

---

⁴ Foundation for this evidence may include testimony from experienced law enforcement officers that the activities observed are appropriately considered to be "capering."  In a related context, a reviewing court's determination of reasonable suspicion is a process that "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

⁵ It does not appear that the Government desires to introduce the prior convictions, per se, but rather desires to introduce the facts surrounding the home invasions and flight, as well as the circumstances surrounding the seizure of evidence from the Honda and Defendants' homes.

Bandana robberies. As a result, the Government argues that the evidence seized in the course of the arrest of the May 18, 2010 home invasions and the subsequent flight from the scene is inextricably intertwined with the evidence needed to tie Defendants to the Bandana robberies. Finally, the Government contends that the evidence of flight is also evidence of Defendants' consciousness of guilt.

Evidence should not be treated as "other crimes" evidence when "the evidence concerning the ['other'] act and the evidence concerning the crime charged are 'inextricably intertwined.'" *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987) (*citing United States v. Aleman*, 592 F.2d 881, 885 (5th Cir. 1979). Here, evidence tying Defendants to the Bandana robberies, an explanation of the police surveillance, report of residential robbery with shots fired, and hot pursuit of Defendants in the Honda may be offered to explain the context of the arrest of Defendants and seizure of evidence. The evidence connecting Defendants to the Bandana robberies would be incomplete and confusing if the investigators are unable to explain how they collected the evidence in the context of the home invasions and the subsequent flight. Indeed, the *Aleman* court explained:

> The extrinsic acts rule is based on the fear that the jury will use evidence that the defendant has, at other times, committed bad acts to convict him of the charged offense. (Citation omitted). In the usual case, the "other acts" occurred at different times and under different circumstances from the crime charged. The policies underlying the rule are simply inapplicable when some offenses committed in a single criminal episode become "other acts" because the defendant is indicted for less than all of his actions.

592 F.2d at 885. Similarly, in this case, the seizure of evidence connecting Defendants to the Bandana robberies arose during the flight and is intertwined with the admissible home invasion evidence.

Additionally, "other act" evidence may be admitted when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-1013 (9th Cir. 1995). Here, testimony regarding the home invasion and flight evidence may be offered to explain the sequence of events beginning with the surveillance of Defendants until their arrest after the home invasion. Also, the importance of the evidence seized is necessary to allow the jury to make sense of the

testimony that purportedly connects Defendants to the Bandana robberies.

Although evidence of other crimes is not admissible to prove the character of a person in order to show action in conformity, it is admissible to prove plan and identity. Fed. R. Evid. 404(b). Because identity is a key issue in this case, evidence that, around the same time as the Bandana robberies, Defendants joined together to commit the home invasion robberies, used the Honda for transportation, brandished firearms and demanded money, is admissible to show a plan or scheme similar to that alleged in the Bandana robberies. In addition, evidence that Merritte possessed the Kel-Tec firearm stolen during one of the previous Bandana robberies and Defendants possessed items such as cell phones and clothing stolen during the Bandana robberies, constitutes material facts that may be used to prove the identity of the Bandana robbers. Finally, evidence that the Kel Tec handgun was discharged during the home invasion is relevant to show that a firearm may have been brandished, as charged in count twelve of the indictment, during the Bandana robberies.

Accordingly, the home invasions and alleged flight evidence easily satisfy the Rule 404(b) framework four-part test. First, evidence of the home invasions prove a relevant point, that is, the robbers' identity and scheme or plan to commit the robberies. The evidence recovered after the arrest is critically important to prove the Government's claim. Second, the home invasions occurred within a few days of the latest Bandana robbery on May 15, 2010 and are therefore not remote in time. Third, the evidence of the home invasions is based upon reliable evidence, that is, the observations of law enforcement officers and the physical evidence seized from Defendants and the Honda and is therefore substantial evidence. Fourth, the home invasions were conducted under circumstances similar to those resulting in the robberies. Defendants participated in the robberies, a firearm was brandished to obtain property of the victims, and the Honda was used for transportation to and from each robbery.

Alternatively, the Government argues that the flight is admissible because it constitutes evidence of Defendants' consciousness of guilt. Merritte contends that the flight is not connected with the conspiracy or the Bandana robberies. It is unknown whether Defendants attempted to avoid the police because they committed the home invasions or because they possessed evidence in

their vehicle which tied them to the Bandana robberies. Generally, evidence of flight is admissible as evidence of consciousness of guilt and of guilt itself. *See United States v. Harris*, 792 F.2d 866, 869 (9th Cir. 1986). In *Harris*, the defendant argued that evidence of his flight from a police officer eight days after a crime should not be admitted absent a showing that he was a suspect in the robbery investigation or the flight occurred immediately after the crime. *Id.* The Court rejected that argument and found that the government need not, as a condition of admissibility, lay a foundation that the defendant knew he was being sought for the crime charged. *Id.* In doing so, the Ninth Circuit held that probative value of flight evidence depends upon all facts and circumstances and is a question of fact for the jury. *Id.* Similarly, in this case, evidence of flight may be assessed by the jury to determine what weight to assign to it. Accordingly, the Court finds that the evidence of the alleged flight should not be excluded on this alterative ground.

Having determined that the proffered evidence related to the home invasions and alleged flight satisfies the admissibility requirements of Rule 404(b), the Court continues with the Rule 403 balancing requirement. A court measures the probative value of evidence by its "'tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence.'" Fed. R. Evid. 401. The Court must consider the degree to which the fact is at issue and the need for proving the point by using evidence of criminal conduct. *See United States v. Herman*, 589 F.2d 1191, 1198 (3d Cir. 1978), cert. denied, 441 U.S. 913 (1979). As discussed above, there are no witnesses who can identify either Merritte or Smith as being the perpetrator of any of the indicted Bandana robberies. Accordingly, the evidence at issue is clearly probative to a material fact in the case.

On the other hand, it is obvious that the evidence of home invasion and alleged flight are prejudicial to Defendants. Prejudice will always arise upon the admission of evidence of a defendant's criminal conduct. *United States v. Johnson*, 820 F.2d 1065, 1069 (9th Cir. 1987). "Unfair prejudice" is defined as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Notes of the Advisory Committee on the proposed Fed. R. Evid. As a result, evidence, even though it may be otherwise admissible, should be excluded where it tends to prove only criminal disposition. *See United States v. Brown*, 562

F.2d 1144 (9th Cir. 1977). In *United States v. Major*, the Ninth Circuit upheld the district court's decision to allow the government to introduce evidence of an uncharged home invasion robbery and three uncharged drive-by shootings. 676 F.3d 803 (9th Cir. 2012). Because identity was an issue, the Ninth Circuit ruled that the ballistic evidence of the uncharged crimes could be used to show that the same gun was used in some of the robberies. *Id.* at 808-809. Here, the spent Kel-Tec handgun cartridge from the uncharged home invasion connects the Kel-Tec handgun taken from one of the Bandana robberies to Defendant Merritte, as does the evidence seized as the result of the home invasion arrest. Therefore, the Court finds that the evidence related to the two home invasions and alleged flight is highly probative and not unfairly prejudicial. As a result, it will not recommend that such evidence be excluded.

Based on the foregoing and good cause appearing therefore,

## ORDER

**IT IS HEREBY ORDERED** that Defendant Smith's Motion for Joinder to Defendant Merritte's Motion (#85) is **granted**.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendant Develle Rural Merritte's Motion in Limine to Preclude Fed. R. Evid. 404(b) Evidence (#80) be **denied.**[6]

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual

---

[6] See fn. 2 related to evidence not addressed in this order based on the Government's representations that it does not intend to introduce it.

issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 3rd day of April, 2013.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**