**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>  v.<br><br>Phillip Smith, et al.,<br><br>        Defendants. | Case No. 2:11-cr-58-JAD-CWH<br><br>**Order Adopting the U.S. Magistrate Judge's Report and Recommendation [Doc. 87] and Denying Motion in Limine [Doc. 80]** |

A series of armed robberies occurred in Las Vegas, Nevada between January 18, 2010, and May 15, 2010, at local businesses; collectively, these were known as the "Bandana" robberies due to the attire the robbers used to hide their identities. Defendants Phillip Smith and Develle Rural Merritte are charged with committing these crimes. A Grand Jury returned a twelve-count indictment against Smith and Merritte on February 15, 2011, and the government filed a Superseding Indictment on May 1, 2012. In the Superseding Indictment, both men are charged with one count of Conspiracy to Interfere with Commerce by Armed Robbery, 18 U.S.C. § 1951 (Count 1); thirteen counts of Use of a Firearm During and in Relation to a Crime of Violence, 18 U.S.C. § 924(c)(1)-(2) (Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26); and twelve counts of Interference with Commerce by Robbery, 18 U.S.C. §§ 1951-52 (Counts 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25). After a series of delays, trial is now scheduled to begin on April 29, 2014.

The government notified Merritte that it intended to introduce evidence under F.R.E. 404(b), the exact nature of which is not defined. Merritte moved in limine to limit the use of the following evidence at trial: (1) that related to Merritte's state court conviction for attempted murder and robbery; (2) prior bad acts, including his "capering" of businesses; (3)

1   photographs of a May 18, 2010, home invasion at 5200 Alpine Place, Las Vegas, Nevada;

2   and (4) an alleged flight from law enforcement on May 18, 2010.  Doc. 80 at 5-8.  Smith

3   moved to join in the Motion.  Doc. 85.

4          Both motions were referred to U.S. Magistrate Judge Carl Hoffman, who issued a

5   two-part decision granting Smith's Motion to join Merritte's motion, and then recommending

6   that the now-joined motion in limine be denied.  Doc. 87 at 10.  Merritte filed objections to

7   Magistrate Judge Hoffman's recommendation regarding the motion in limine, Doc. 89, in

8   which Smith was later granted leave to join.  Docs. 117, 118.  The government's response

9   agrees with Magistrate Judge Hoffman's report and recommendation without adding new

10  arguments.  Doc. 92.[1]  After a de novo review, this Court adopts Magistrate Judge Hoffman's

11  Report and Recommendation [Doc. 87] and denies the motion in limine [Doc. 80] for the

12  reasons set forth below.

**Discussion**

14         A U.S. Magistrate Judge may be designated to "conduct hearings . . . and to submit

15  proposed findings of fact and recommendations" regarding the disposition of motions before

16  the Court.  28 U.S.C. § 636(b)(1)(B).  A party may file objections to these proposed findings

17  and recommendations, which the district court reviews de novo.  28 U.S.C. § 636(b)(1);

18  *United States v. Berhardt*, 840 F.2d 1441, 1444 (9th Cir. 1988); *Schmidt v. Johnstone*, 263 F.

19  Supp. 2d 1219, 1125 (D. Ariz. 2003) (quoting *United States v. Reyna-Tapia*, 328 F.3d 1114,

20  1122 (9th Cir. 2003)) (finding that de novo review is required as to findings of fact and

21  conclusions of law where parties object).  The standard of review applied to the unobjected-

22  to portions of the report and recommendation is left to the district judge's discretion.  28

23  U.S.C. § 636(b)(1); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121–22 (9th Cir. 2003) (a

24  "district judge must review the magistrate judge's findings and recommendations de novo *if*

25  *objection is made*, but not otherwise.") (emphasis in original).

26

27

28
_____

[1] On August 12, 2013, this case was reassigned to the undersigned.

**A.      "Any" Evidence Related to Merritte's State Court Conviction**

Merritte's objection seeks to exclude evidence related to a prior state court conviction for attempted murder and robbery.  Doc. 89 at 3.  He contends that this evidence is not relevant to any pending federal charges, and is therefore inadmissible under F.R.E. 403 and 404(b).  *Id.*[2]  He also claims that the "entire circumstances resulting from the arrest of Mr. Merritte on May 18, 2010 should be excluded."  *Id.*  To the degree that Merritte's objection seeks exclusion of the "entire circumstances" surrounding the arrest it is overbroad and denied, as it does not target any specific portion of Magistrate Judge Hoffman's Report and Recommendation.

**B.      Evidence from Alleged Home Invasions**

      **1.      5200 Alpine Place Home Invasion**

Merritte contends in his objection that "[t]he alleged home invasions [did] not take place in a similar geographical area as the 'Bandana' robberies.  This extends beyond use of just the mere conviction."  Doc. 89 at 3.  This opaque argument was not raised in Merritte's original motion in limine, which alleged the irrelevant and prejudicial nature of introducing photographs from the 5200 Alpine Place home invasion scene, including photographs of an individual shot during the invasion.  Doc. 80 at 7.  Magistrate Judge Hoffman's actual conclusion understandably focused on those arguments that Merritte actually raised, and Merritte does not actually contest any of those conclusions.  The objection is overruled.

Even if Merritte had properly objected to Judge Hoffman's findings with respect to the 5200 Alpine Place home invasion, the Court finds ample support for Judge Hoffman's conclusions.  Under Federal Rule of Evidence 404(b), "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  *Id.*  However, this evidence may be admitted for other purposes, such as "proof of motive, opportunity, intent,

---

[2] Merritte argues that although a gun was present during the action giving rise to his state court conviction, and a gun was present at all of the alleged robberies at issue, the government has not alleged that Merritte's gun was discharged in any of the actions giving rise to the current criminal proceedings.  *Id.*

preparation, plan, knowledge, identity or absence of mistake or accident." *Id.*; *see*

*Huddleston v. United States*, 485 U.S. 681, 685 (1988).  Rule 404(b) is generally regarded as

"a rule of inclusion - not exclusion."  *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir.

2007).  The Ninth Circuit will admit evidence under Rule 404(b) if it "(1) tends to prove a

material point; (2) is not too remote in time; (3) is based upon sufficient evidence; and (4) in

some cases, is similar to the offense charged."  *United States v. Banks*, 514 F.3d 959, 976

(9th Cir. 2008) (quotation omitted).

   In support of its position that the evidence of the May 18, 2010, home invasion was

admissible, the government originally pointed to the following contentions: First, on

February 13, 2010, Smith and Merritte robbed a local Subway restaurant and left the scene of

the crime in a silver Honda Accord.  Doc. 82 at 4.  The government further contended that on

the night of the May 18, 2010, investigators were conducting surveillance of Smith and

Merritte, who were observed riding in a Honda Accord.  *Id.* at 8-11.  Investigators then heard

gunshots in the area of 5200 Alpine Place, and observed Smith and Merritte leaving the area

in the Honda at a high rate of speed.  *Id.* at 8-9.  Investigators then pursued the departing

Honda; during the chase, items were thrown from the vehicle, and Merritte eventually

jumped out of the passenger side of the car and was apprehended shortly thereafter.  *Id.* at 9.

The government argued that "[a] hat, shirt, and pair of shoes police recovered clearly

matched those worn by the suspect in [a] May 15, 2010 Subway robbery."  *Id.*  In addition,

"numerous items" were also taken from the Honda that matched those taken from other crime

scenes.  *See id.*  The government argued it would be difficult to discuss recovery of the items

at Smith and Merritte's trial if the context of the May 18, 2010, chase is not explained.  *See*

*id.*

   Judge Hoffman agreed, finding that the evidence satisfied Rule 404(b) because it

could be admitted to prove plan or scheme similar to that giving rise to the allegations in this

suit because both schemes involved the two defendants, who used a Honda for transportation,

brandished firearms, and demanded money.  Doc. 87 at 8.  Judge Hoffman also found that

some of the particular contraband recovered after the chase matched that stolen during

several of the "Bandana" robberies, which could help to prove the identity of the robbers themselves.  Judge Hoffman also noted that the home invasion occurred on May 18, 2010, just three days after that last of the "bandana" robberies, and thus was not too remote in time. Judge Hoffman found that the correlation was based on reliable sources, i.e., "observations of law enforcement officers and the physical evidence seized from Defendants and the Honda." *Id.*  Judge Hoffman finally found that the circumstances were similar to those that resulted in the "Bandana" robberies.  *Id.*  None of Judge Hoffman's conclusions were erroneous, and Merritte's objection is thus overruled.

### 2.    400 N. Major Ave. Home Invasion

Merritte argues that "[t]he alleged home *invasions* [did] not take place in a similar geographical area as the 'Bandana' robberies."  Doc. 89 at 3.  Again, Merritte's Motion fails to clarify what "invasions" he refers to in his objections.  His Motion in Limine only offers substantive arguments for the exclusion of one "invasion" at 5200 Alpine Place, Las Vegas, Nevada.  Although a second "invasion" was originally listed in Merritte's brief—at 400 N. Major Ave., Henderson, Nevada—there is no specific argument in Merritte's motion suggesting why this second "invasion" should be limited, or whether the arguments made are coterminous.  *See* Doc. 80 at 3, 7.  The government appears to have been equally confused by Merritte's contentions, as it referred to "home invasions," yet understandably directed its arguments only to the 5200 Alpine Place "invasion," as that was the only one to which Merritte had presented any argument.

This terminological confusion is ultimately meaningless because Merritte's original motion made no attempt to raise specific arguments as to why evidence from the 400 N. Major Ave. "invasion" should be excluded.  Understandably, Magistrate Judge Hoffman's analysis did not reach it either.  To the degree Merritte's objection encompasses evidence from the 400 N. Major Ave. home invasion, the objection is overruled.

1

**C.     Any Evidence Related to Alleged "Flight" on May 18, 2010**

2

**1.     Inextricably Intertwined**

3

Merritte contends, in both his original motion and objections, that no evidence

4

connects his alleged May 18, 2010 "flight" to the "Bandana" robberies at issue in this case.

5

Instead, he argues that this "flight," if it actually occurred, related to his state criminal

6

proceedings, and thus is not relevant.  Docs. 80 at 6; 89 at 3-4.  Merritte's argument appears

7

to take umbrage with Magistrate Judge Hoffman's finding that the "flight" evidence, even if

8

did not relate specifically to the federal charges, is inextricably intertwined with evidence

9

relating to those charges because it helps paint a complete and coherent picture of the

10

circumstances surrounding Defendants' arrest, as well as the prosecutors' collection of

11

evidence.  Doc. 87 at 7-8.

12

"[T]he policies underlying rule 404(b) are inapplicable when offenses committed as

13

part of a "single criminal episode" become other acts simply because the defendant "is

14

indicted for less than all of his actions."  *United States v. Williams*, 989 F.2d 1061, 1070 (9th

15

Cir. 1993).  Thus, the Ninth Circuit has held that evidence is not considered "other crimes" or

16

"other act" evidence when it is inextricably intertwined with evidence concerning the crime

17

charged.  *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987).

18

Evidence is "inextricably intertwined" when it (1) may constitute a portion of the

19

transaction giving rise to the criminal charge; or (2) may be necessary to allow the

20

prosecution "to offer a coherent and comprehensible story regarding the commission of the

21

crime."  *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995).[3]  Courts

22

look to both temporal proximity and substantive similarly when determining that evidence is

23

inextricably intertwined.  *See United States v. Rrapi*, 175 F.3d 742, 750 (9th Cir. 1999)

24

(evidence of prior uncharged burglaries was "inextricably intertwined" with charged crimes

25

where uncharged burglaries were obtained during period of government surveillance,

26

27

_____

28

[3] "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Rule 404(b)(2).

1
2
3
4

involved similar pattern of conduct, and occurred close in time to charged crimes);[4] *see*
*United States v. Berkman*, 298 F.3d 788, 794 (9th Cir. 2002) (finding that evidence regarding
drug mule's prior drug run was necessary to show why mule was later entrusted with more
than $1 million worth of drugs).

5
6
7
8
9
10
11

　　　　Judge Hoffman correctly pointed out that the evidence in question occurred in the
context of a pattern of behavior that explained police surveillance, a report of a residential
robbery in which shots were fired, and the pursuit of defendants in the Honda.  Doc. 87 at 7.
Judge Hoffman correctly concluded that this evidence helps establish a sequence of events
"beginning with the surveillance of Defendants until their arrest after the home invasion."
*Id.*  The Court agrees that exclusion of the "flight" evidence would confound the
government's evidentiary presentation, and thus overrules Merritte's objection to the same.

12

　　　　**2.　　　Admission of Guilt**

13
14
15
16
17
18
19
20

　　　　Merritte also contests that Magistrate Judge Hoffman erred in concluding that because
flight from police can be circumstantial evidence of guilt generally, because there is no
evidence that when Merritte "fled" the police on May 18, 2010, he sought to avoid arrest for
his federal crimes.  Doc. 89 at 3-4.  Thus, Merritte argues, the evidence of "flight" is not
relevant.  *Id.* at 4.  Judge Hoffman acknowledged this ambiguity and concluded that, in light
of the same, evidence of the flight was properly viewed in light of all of the facts and
circumstances, which the jury should have the opportunity to decide.  Doc. 87 at 8-9.  This
Court agrees.

21
22
23
24

　　　　"Evidence of flight is generally admissible as evidence of consciousness of guilt and
of guilt itself."  *United States v. Harris*, 792 F.2d 866, 869 (9th Cir. 1986).  To introduce
such evidence, the government need not establish as a precondition that upon fleeing the
scene "the defendant knew he was being sought for the particular offense charged."  *Shorter*

25
26
27
28

─────────────

[4] In *Rrapi*, the U.S. District Judge also gave a limiting instruction when the evidence was introduced at trial.  The Ninth Circuit noted that this alternative ruling was appropriate, but found that the evidence would have been properly introduced without a limiting instruction.

*v. United States*, 412 F.2d 428, 430 (9th Cir. 1969).[5]  Instead, "[s]ince 'flight' is essentially an admission by conduct, its probative value as circumstantial evidence depends upon the degree with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1207 (9th Cir. 1991) (quoting *United States v. Silverman*, 861 F.2d 571, 581 (9th Cir. 1988)).  All four inferences are derived from the totality of the circumstances.  *See Silverman*, 861 F.2d at 581.

These inferences can be warranted when criminal charges were actually filed against the defendant.  *See United States v. King*, 200 F.3d 1207, 1215 (9th Cir. 1999) (finding that inferences (2), (3), and (4) could be drawn from defendant's knowledge of the criminal charges).  They can also arise when the defendant knew that he was suspected of a crime. *United States v. Tille*, 729 F.2d 615, 622 (9th Cir. 1984) (finding that newspaper publication of crime gave rise to inference of knowledge).  Moreover, an error in allowing such an inference may be harmless if the jury would have already concluded that the defendant committed the act.  *United States v. Perkins*, 937 F.2d 1397, 1403-04 (9th Cir. 1991).  Even if not every inference leads to a finding of guilt, error can be cured with a jury instruction that the evidence is not necessarily indicative of guilt, and that there could be innocent reasons for the flight.  *See United States v. Dixon*, 201 F.3d 1223, 1232-33 (9th Cir. 2000).

Judge Hoffman correctly noted that, in the Ninth Circuit, the prosecution need not shows that the defendant knew he was a suspect in a robbery investigation or that the flight occurred immediately after the crime in order to introduce evidence of flight.  Doc. 87 at 8-9. The totality of the circumstances analyzed in Judge Hoffman's Report and Recommendation

---

[5] *Shorter*, which was cited favorably in *Harris*, distinguishes the lone Ninth Circuit case offered by Merritte in support of his contention: *Embree v. United States*, 320 F.2d 666 (9th Cir. 1963) ("*Embree* does not stand for the proposition that evidence of flight shall not be admitted unless the government, as a condition of admissibility, first lays a foundation that the defendant knew he was being sought for the particular offense charged.  Moreover, in the case at bar, there was ample evidence to indicate that appellant did know he was being sought for the bank robbery.").

clearly show the first, second, and fourth *Silverman* inferences.  As to the third inference, the *Silverman* court itself acknowledges that "[t]he inference from proof of an unfocused consciousness of guilt to consciousness of guilt concerning the crime charged has proven especially problematic.  Flight and concealment of identity can be consistent with innocence, or with guilt of misconduct unknown to the government."  *Silverman*, 861 F.2d at 581.  In fact, there is a technical disconnect here as Defendants could have been fleeing for fear of prosecution from the 5200 Alpine Place home invasion that had just occurred, and which, as Merritte correctly points out, is not a crime charged in this proceeding even though, by all accounts, it bears great resemblance to the "Bandana" robberies.

However, unlike the circumstances in *Silverman* and *Dixon*, which involved entirely innocent or vague alternative explanations for a criminal defendant's alleged flight, Merritte acknowledges that his flight involved criminal activity.  Moreover, Merritte's guilt was not "unfocused," but directly applicable to a home invasion which bears striking similarity to the crime charged.  Merritte attempts to sidestep these issues by jurisdictional sleight of hand, contending that since criminal prosecution for the 5200 Alpine Place home invasion was entrusted to a different jurisdiction, the government cannot prove his flight pertains to the federal crimes.  But he ignores a critical point: as Judge Hoffman recognized, a weapon recovered during the May 18, 2010, chase had been stolen during one of the "Bandana" robberies.  Doc. 87 at 2.

In light of the specific circumstantial evidence brought to bear on this case, the Court finds the inference to be drawn from Merritte's objection at least equally "problematic": i.e., a defendant should not be able to evade a guilt inference by committing a number of crimes and then selectively (and conveniently) choosing the crime he felt most guilty for during his flight.[6]  Merritte's inner turmoil, if any, is best left for the jury to resolve.  Judge Hoffman's

---

[6] Conversely, a criminal prosecutor would be disincentivized to seek to withdraw any portion of a crime giving rise to a sequence of events, even if later unjustified—for fear of losing the guilt inference.

1  commonsense finding has preserved this delegation and avoided the promotion of absurd

2  incentives.  The Court overrules Merritte's objection on this point.[7]

3  **D.      Any Other Evidence of Alleged "Capering"**

4         Merritte's objection also re-urges that any evidence of "capering," specifically that

5  Merritte and Smith "drove through parking lots and parked in front of a Thai restaurant,"

6  should be excluded, as there is no evidence that any of the allegedly "capered" businesses

7  were robbed.  Doc. 89 at 4.  Merritte also argues that evidence that he and Smith were

8  present in the Honda "cannot prove any material element of the crimes charges and therefore

9  [has] no probative value." *Id.*

10        Judge Hoffman concluded that this evidence satisfied the Rule 404(b) four-part test as

11 to the government's conspiracy count because the "capering" could tend to prove that the

12 defendants acted together, drove in the same car used for the "bandana" robberies, and drove

13 past stores similar to those which were robbed.  Doc. 87 at 5.  Judge Hoffman concluded that

14 the "capering" took place around the time that the "bandana" robberies occurred, and that the

15 evidence was procured from direct observations by law enforcement officers.  *Id.*  Judge

16 Hoffman also concluded that the evidence related to circumstances "that made it appear that

17 Defendants were planning a robbery similar to other robberies which had occurred." *Id.* at 5-

18 6.  For these reasons, Judge Hoffman concluded that the evidence was material.  *See id.* at 6.

19        Under the standards already articulated, the Court agrees with Judge Hoffman's

20 analysis and independently finds that the evidence of "capering" is plainly relevant to the

21 single count of Conspiracy to Interfere with Commerce by Armed Robbery, 18 U.S.C. §

22 1951 (Count 1) and the twelve counts of Interference with Commerce by Robbery, 18 U.S.C.

23 §§ 1951-52 (Counts 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25).  The Court overrules Merritte's

24 objection.

25

26

27

28
[7] Since Merritte never requested that the Court give a limiting instruction with respect to this evidence, Judge Hoffman was not tasked with reaching this issue, and the Court offers no opinion on the propriety of such an instruction by way of this Order.

**E.      Prejudicial Nature of the Evidence**

Although Judge Hoffman conducted Rule 403 balancing tests and concluded that, in all evaluated cases, the evidence was not unduly prejudicial, Merritte objects, arguing that "the 404(b) evidence has limited probative value to the charges and is highly prejudicial." Doc. 89 at 2-3.  However, Merritte does not point to any specific finding that Judge Hoffman made regarding whether the evidence was, in fact, unfairly prejudicial.

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence it its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  *Id.*  The Court is obligated to consider the prejudicial effect of any evidence sought to be introduced.  *See Old Chief v. United States*, 519 U.S. 172, 182 (1997) (noting that "[t]here is . . . no question that propensity would be an 'improper basis' for conviction").  "Rule 403 requires the proponent to show that the probative value of the proffered evidence is not substantially outweighed by the danger of unfair prejudice."  *United States v. Savinovich*, 845 F.2d 834, 837 (9th Cir. 1988).

Regardless of whether Merritte has pointed to any specific evidence as a point of contention, the Court finds that Judge Hoffman correctly determined that for all the evidence he considered, its probative value outweighs its prejudicial effect.  Merritte's generalized objection is overruled.

**Conclusion**

**IT IS THEREFORE ORDERED** that Merritte's Objections to Report & Recommendation of United States Magistrate Judge [Doc. 89] are overruled.

**IT IS FURTHER ORDERED** that the Magistrate Judge's Order and Findings and Recommendation [Doc. 87] is **ACCEPTED and ADOPTED** to the extent it is consistent with this Order; the Motion in Limine [Doc. 80] is **DENIED.**

DATED: February 12, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE

Page 11 of  11
