**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

* * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. PHILLIP SMITH, *et al.*, Defendants. | ) | Case No.: 2:11-cr-00058-JAD-CWH<br>**FINDINGS AND RECOMMENDATION**<br>(Motion to Suppress #134) |

This matter was referred to the undersigned Magistrate Judge on Defendant Phillip Smith's Motion to Suppress (#134), filed on May, 30, 2014. The Court also considered the Government's Response (#144), filed on July 17, 2014, and Defendant Phillip Smith's Reply (#147), filed on July 23, 2014. On June 16, 2014, the Government filed a Motion to Strike Defendant's Motion to Suppress (#136) as untimely filed. Defendant Phillip Smith filed a Response (#141) on June 25, 2014 contending that there was good cause to allow the late motion. On July 3, 2014, the Court issued Order #142 denying the Government's Motion to Strike (#136).

**BACKGROUND**

Defendants Phillip Smith ("Smith") and Develle Merritte ("Merritte") are charged by way of a Superceding Criminal Indictment with one count of Conspiracy to Interfere with Commerce by Armed Robbery in violation of Title 18, United States Code, Section 1951, thirteen counts of Use of a Firearm During and in Relation to a Crime of Violence in violation of Title 18, United States Code, Sections 924(c)(1)(A)(ii) and 924(c)(2), and twelve counts of Interference with Commerce by Robbery in violation of Title 18, United States Code, Section 1951. (Superseding Indictment #53.)

In early 2010, the Las Vegas Metropolitan Police Department ("Metro") was investigating a series of robberies that occurred between January and April, 2010, at several businesses located in

Las Vegas. Metro identified a specific Honda Accord as a vehicle involved in one of the robberies during that time. Over several weeks, detectives conducted physical surveillance of the Accord.[1] The investigation revealed that Smith regularly drove the vehicle, with Merritte as a passenger, and that they had on several occasions "cased" businesses similar to those that had been robbed. Such information led Metro to suspect that Smith and Merritte were preparing for another robbery.

On May 18, 2010, Smith and Merritte were arrested after a home invasion in which an individual was allegedly shot. The arrest occurred after a high-speed pursuit in Las Vegas that ended when the Accord, driven by Smith, collided with another vehicle. Merritte, who was also in the vehicle on that day, was arrested in a neighborhood where he fled during the pursuit.

On May 19, 2010, in the early morning hours, Detective Sclimenti submitted an affidavit ("Sclimenti Affidavit") in support of a telephonic search warrant, which was approved by Nevada Eighth Judicial District Judge Timothy Williams, to search the Accord, Smith's residence at 3032 Beaufort Court, North Las Vegas, and to obtain buccal swabs from Smith.[2]

In the instant motion, Smith moves to suppress the evidence seized pursuant to the May 18, 2010 search warrant approved by Judge Williams on the grounds that (1) the Sclimenti Affidavit in support of the search warrant contained false facts or omitted facts, (2) probable cause was based on insufficient, tenuous and speculative facts, and (3) the facts supporting the probable cause for the warrants were stale. In response, the Government argues that Smith is not entitled to a hearing on the sufficiency of the affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978), there is sufficient evidence upon which to base a determination of probable cause, and the facts were not stale because the investigation was ongoing.

---

[1] As previously reported in this case, Metro used a tracking warrant for cellular telephone numbers and a Global Positioning System device attached to the Accord to assist in its investigation and surveillance. *See* Report and Recommendation to Deny Motion to Suppress Evidence (#72), adopted October 15, 2012 (#81).

[2] The warrant also requested to search Merritte and two residences associated with him, but Smith does not move to suppress those results and Merritte did not join the present motion.

# DISCUSSION

## I. Entitlement to a *Franks* Hearing

### A. Legal Authority

In *Franks v. Delaware*, the Supreme Court established a two-prong test for challenging the sufficiency of a search warrant affidavit. 438 U.S. 154 (1978). The Court noted that there is a "presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if he can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions and (2) the affidavit cannot support a finding of probable cause without the allegedly false information. *Id*. at 155-56. "To justify a hearing, a defendant must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008) (citation omitted). "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant, disputed factual issue' exists such that a hearing is required." *United States v. Martin*, 2010 WL 5575323 *7 (D. Nev.) (*citing United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990)).

Even if a defendant makes the requisite preliminary showing, that is not enough, standing alone, to entitle a defendant to a *Franks* hearing. A defendant must also show that the affidavit would not be sufficient to support a finding of probable cause even if it was purged of its falsities and supplemented by the omissions. *See United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985) (citing *Franks*, 438 U.S. at 171-72). "The effect of misrepresentations and omissions on the existence of probable cause is considered cumulatively." *Stanert*, 762 F.2d at 782 (citation omitted). Thus, the court's review of a request for a *Franks* hearing must determine whether the affidavit, once corrected, would provide a magistrate judge with the basis necessary to conclude that probable cause exists. *Id*.

Probable cause determinations are made by viewing the "totality of the circumstances" set forth in the affidavit. *Illinois v. Gates*, 426 U.S. 213 (1983). Probable cause is a fluid concept not

easily reduced to a set of legal rules. *Id*. Consequently, the task of a magistrate judge is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238. A magistrate judge's determination of probable cause is accorded significant deference. *See United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995).

After careful consideration, the Court finds that Smith has not met his burden to demonstrate that he is entitled to a *Franks* hearing. The Court will first address the alleged false statements and misleading omissions in the Sclimenti affidavit. Second, the Court will analyze whether probable cause exists without the alleged false information and with the inclusion of alleged misleading omissions.

### **B. Detailed Offer of Proof of False Statements and Misleading Omissions**

The first requirement for a *Franks* evidentiary hearing is that the defendant make specific allegations that the affidavit contains intentionally or recklessly false statements or misleading omissions. *See Craighead*, 239 F.3d at 1080. The Government does not dispute that Smith has made specific allegations as to the Sclimenti affidavit, but argues that the alleged statements and omissions are neither false nor misleading, and do not undermine the probable cause determination made by Judge Williams.

"When challenging a warrant affidavit pursuant to *Franks*, the defendant must not only specify which portions are false, but must also furnish affidavits or other reliable documentation in support of his challenge or satisfactorily explain the absence of such supporting documentation." *United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994) (citation omitted). The failure to do so may result in the motion being denied. *See, e.g.*, *United States v. Ruddell*, 71 F.3d 331, 334 (9th Cir. 1995). In determining whether a defendant is entitled to an evidentiary hearing, "clear proof" of intentional or reckless false statements or misleading omissions is not required. *United States v. May*, 2009 WL 1542557, *9 (D. Nev.) (citing *Stanert*, 762 F.2d at 781). Such proof is reserved for the evidentiary hearing. *See United States v. Gonzales, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005). The defendant must, however, "offer direct evidence of the affiant's state of mind or inferential

evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." *May*, 2009 WL 1542557 at *9 (quoting *United States v. Souffront*, 338 F.3d 809, 822-23 (7th Cir. 2003)). Deliberate intent or reckless disregard for the truth can be inferred from the omission of material facts that would have negated probable cause, but the "omission rule . . . does not require that the affidavit provide general information about every possible theory that would controvert the affiant's good faith assertion of probable cause." *May*, 2009 WL 1542557 (quoting *Craighead*, 539 F.3d at 1081).

Intentional or reckless omissions may also provide a justification for a *Franks* hearing. *See United States v. Jawara*, 474 F.3d 565, 582 (9th Cir. 2007). In *Jawara*, the Ninth Circuit reiterated that a defendant can "challenge a facially valid affidavit by making a substantial preliminary showing that 'the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading.'" *Id*. (citing *Stanert*, 762 F.2d at 781 ("By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning.")). Omissions are not fatal unless they are made with the intent to deceive the court. *See United States v. Nevell*, 58 F.Supp.2d 1204, 1208 (D. Or. 1999) (citations omitted). As with false statements, a defendant must also show that the affidavit, once corrected, would not provide a substantial basis to conclude probable cause existed to issue the warrant. *Stanert*, 762, F.2d at 782.

Smith identifies statements within the Sclimenti affidavit that he believes are intentionally or recklessly false and omissions that he believes are deliberately misleading. The Court will review these statements to determine whether they are false or misleading and, if so, whether they are the result of a deliberate or reckless disregard for the truth. *See e.g.*, *United States v. Kyllo*, 37 F.3d 526, 529 (9th Cir. 1994); *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir. 1987) (mere negligence is not sufficient to warrant a *Franks* hearing); *United States v. Kiser*, 716 F.2d 1268, 1274 (9th Cir. 1983) (must demonstrate false or misleading information included to deliberately or recklessly mislead the magistrate); *Franks*, 438 U.S at 171 ("Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes

probable cause.”).

On May 19, 2010, Judge Williams authorized the subject searches based upon an affidavit sworn by Detective Sclimenti. *See* Application for Telephonic Search Warrant, Def.’s Mot. #134, Ex. A. The Government contends that the Sclimenti Affidavit establishes probable cause to believe that evidence related to the investigation of Smith’s involvement in robberies in Las Vegas would be found in the Honda Accord, Smith’s residence, and his DNA. In contrast, Smith contends that the Sclimenti Affidavit contains a false statement related to the license plate of the vehicle that must be excised and several misleading omissions related to the investigation into the series of robberies must supplement the affidavit. Moreover, Smith contends that the searches would not have been authorized if all the omitted information had been included.

### 1. Alleged False Statement: Complete License Plate Number

Smith contends that when Detective Sclimenti provided a complete license plate number in the Sclimenti Affidavit to support the search of the Honda Accord, his statement was false because the surveillance recordings at the February 13, 2010 Subway robbery only provided a partial license plate number. Smith argues that by conclusively stating that the Honda Accord was the actual vehicle used in the robbery, the subsequent police work linking the Honda Accord to Smith was much less speculative. Smith argues that the omission of the fact that only a partial plate was seen undermines probable cause.

In response, the Government argues that Smith’s challenge is insufficient to make a substantial preliminary showing that it is a false statement made recklessly or intentionally. Further, the government asserts that this issue does not materially affect the probable cause determination. The Government points out that the entire license number was learned as the result of the investigation, which included narrowing the possible vehicles with that partial license number to the owner in California where the car was registered, and then determining that the owner was a friend of Smith.

The Court finds that the following statements contained in the Sclimenti Affidavit are not false:“During that particular event a suspect vehicle, 2004 gray Honda Accord, California plate 6 Adam, Paul, Mary, 6-0-7, was seen fleeing the area through the drive through. The incident was

captured on video surveillance. A records check revealed that the 2004 Honda Accord is currently registered to Joey Miller . . . San Diego, California." Smith makes no claim that the license plate number is false. He also fails to identify which parts of the license number were included but not seen on the surveillance recording. It is true that Detective Sclimenti omitted the entire explanation of how he determined the license plate number of the 2004 Honda Accord at the Subway robbery. All details of the investigation need not, however, be described in the affidavit. An affidavit need only show facts adequate to support a finding of probable cause. *United States v. Johns*, 948 F.2d 599, 606-607 (9th Cir. 1991).

Moreover, the omission of facts rises to the level of misrepresentation only if the omitted facts "cast doubt on the existence of probable cause." *Id*. Omissions are not fatal unless they are made to deceive the court. *Nevell*, at 1208. Here, the omitted facts would have explained that a partial license number was seen, but would also likely have explained how Detective Sclimenti eventually determined the complete license plate number. These facts would not have negated probable cause or materially affected the probable cause determination. A complete explanation of the method used by detectives to determine the entire license plate number would have further supported the probable cause determination, not negated it. The omission of information that might have strengthened a finding of probable cause does not prompt a *Franks* hearing. *See United States v. Wulferdinger*, 782 F.2d 1473, 1477 (9th Cir. 1986).

Assuming, *arguendo*, that the affidavit is misleading to the extent that it infers that the entire license plate number instead of a partial number was seen, elimination of some of the license numbers does not preclude a finding of probable cause. The Sclimenti Affidavit explains that the connection between the Honda Accord and Smith was based upon an investigation that included a records check and search through social media, linking a friend of the owner of the vehicle to Smith and pictures of Smith standing next to a similar gray Accord. *See* Application for Telephonic Search Warrant, Def's Mot. #134-1, Ex. A, 4. In addition to the fact that a Honda Accord with California license plates was used in the Subway robbery, the Sclimenti Affidavit reveals ample probable cause to support the search of the Honda Accord, Smith's residence, and to take the buccal swab. For instance, the Sclimenti Affidavit indicates that a series of twenty-one robberies

were committed over the period of January 18, 2010 until the time of the Sclimenti Affidavit, on May 19, 2010. Detective Sclimenti states that, based upon his experience of 8 years in law enforcement, the *modus operandi* of many of these robberies is similar enough to indicate that the crimes have been committed by the same suspects. *See United States v. Arrellano-Rios,* 799 F.2d 520, 523 (9th Cir. 1986) ("The experience of a trained law enforcement agent is entitled to consideration in determining whether there was probable cause."). Specifically, the similarities were set forth in the Sclimenti Affidavit: targeted businesses were primarily ethnic restaurants, fast food establishments, and Gamestops; the physical descriptions of the suspects were similar, masks and gloves were worn, handguns carried; demands for money were made from cash registers and safes; customers and employees were also robbed, and employees were then forced into a storage room in the business before the suspects fled. Further, three crimes scenes shared the same foot impressions left by the suspects.

A gray 2004 Honda Accord was seen fleeing the scene at one of the robberies. After investigation, police located a gray 2004 Honda Accord in Las Vegas. They observed it being regularly driven by Smith and noted that it was registered in California and that Smith lived at 3032 Beaufort Court. Further, police observed that on April 29, 2010, Smith picked up another black male adult, later identified as Merritte. Both Smith and Merritte had similar physical characteristics as the suspects involved in the robbery series. During covert surveillance, it appeared that were "casing" two Thai restaurants and a Subway, which were business types consistent with the robbery series. Merritte was wearing a blue baseball hat with unknown logo on the front, which is the same type of hat that the suspect was wearing in three of the robberies.

On May 11, 2010, Smith and Merritte were again subjects of surveillance. Merritte was wearing the same baseball cap and the pair appeared to be casing an Asian restaurant. After dropping Merritte off, Smith went to a parking lot and got out on foot near a Gameshop. On May 12, 2010, Smith returned to the same Gameshop parking lot, but did not appear to be there for any legitimate business. Detective Sclimenti said that during the next few days, detectives continued to observe Smith and Merritte together in the Honda Accord casing Game Tag stores, Gamestops, and Chinese restaurants.

According to the Sclimenti Affidavit, on May 18, 2010, at about 1830 hours, detectives continued their surveillance of Smith in the Honda Accord. They observed him in the vicinity of 5200 Alpine Way in Las Vegas while driving the Honda Accord. About two minutes after the Honda Accord left that area, a robbery with a deadly weapon was reported at an apartment in the same vicinity. Both suspects were black, matched the physical descriptions of Smith and Merritte, were wearing dark clothing, and had handguns. The resident who was robbed was shot. Because police were nearby, they quickly responded, and Smith and Merritte were soon arrested after a high speed chase fleeing from the vicinity of Alpine Way.

Under the totality of circumstances, the Court finds that it was reasonable for Judge Williams to conclude that the various similarities recognized by Detective Sclimenti made it likely that the series of robberies was committed by the same suspects. Smith and Merritte had similar physical attributes to the suspects in the robberies and both rode frequently in the Honda Accord, which was likely present at the scene of one of the robberies. Additionally, both appeared to be extensively casing businesses similar to those that had been robbed in the past and Merritte wore a similar baseball cap as was worn at three of the robberies. Finally, the suspects who had participated together in a robbery, albeit in a home rather than a business, had used a handgun and fled in a Honda Accord. Ultimately, the Court finds that all of these factors constitute a substantial basis to conclude that there is probable cause to believe the Honda Accord might possess evidence of robberies, even without the entire license plate number. Accordingly, the Court finds that Smith has failed to sufficiently support his challenge of the search warrant on this basis. Therefore, a *Franks* hearing is not warranted for this alleged false statement.

**2. Omissions: Color of Vehicle and Descriptions of Suspects**

Smith provides five statements from incident reports of some of the robberies that he claims are omitted from the Sclimenti Affidavit. Smith concludes that had the statements been included, they would defeat probable cause. The statements at issue are as follows:

1. "(D)uring the robbery of January 27, 2010, some of the victims indicated that the suspects fled in a black four door sedan."

2. "(A) witness to the 6300 West Charleston Gamestop robbery told a 911 dispatcher that a "green car four door was seen near Gamestop."

3. "A white guy was also observed near the Gamestop."

4. "(S)imilarly omitted was a victim identification of a "white" suspect in the May 22, 2010 Thai Taste Robbery.

**5.** "One witness told law enforcement concerning a Quiznos robbery: "I noticed two men, first an African American man . . . The second man, an older, roughly late 30s to mid 40s, hispanic, wearing blue jeans."

Defs' Mot. #134, 15.

The Government responds that there is no entitlement to a *Franks* hearing because the omissions were not knowingly and recklessly made in such a way as to render the Sclimenti Affidavit misleading. Additionally, it argues that the statements are taken out of context with the remainder of the witness's observations and that the omissions do not affect probable cause.

A defendant must make a preliminary showing that "the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *Jawara*, at 474 at 582. Smith concludes, without analysis, that these facts were knowingly and recklessly omitted. Further, Smith fails to identify which statements in the affidavit were technically true but misleading. Also, Smith does not explain how Judge Williams was mislead as the result of the omissions. Moreover, Smith provides no explanation for his conclusion that these five omissions were made intentionally or recklessly. Bare assertions to support the claim that omissions were reckless or intentionally misleading do not meet the preponderance that *Franks* requires. *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002).

Furthermore, Smith has made no showing that the omitted facts were material to the question of probable cause. *See United States v. Kiser,* 716 F.2d 1268, 1271 (9th Cir. 1983) (the movant must show that any omitted information is material). Considering that the investigative records summarize separate robberies, and assuming that multiple statements were taken for each robbery, it is likely that there are numerous pieces of information that do not necessarily point to the Smith and Merritte as the robbers. An affiant is not required to provide general information about every possible theory, no matter how unlikely, that would controvert the affiant's good-faith belief that probable cause existed. *See Craighead*, 539 F.3d 1073, 1081 (9th Cir. 2008). Nor does the affidavit need to include all information in police possession. *See Johns*, 948 F.2d at 606-607.

As to omitted Statements 1 and 2, the Court finds that they do not affect the probable cause determination. The Sclimenti Affidavit states that the investigation includes a series of twenty-one robberies, but does not allege that all of the robberies were committed using the gray Honda Accord, or that they were committed by only two individuals, both of whom were African-Americans. As a result, omitted Statement 1 - that the suspects of the January 27, 2010 robbery fled in a black four door sedan - would not mislead Judge Williams because there was no allegation of the same car for all robberies. Similarly, although the Sclimenti Affidavit lists numerous electronic items stolen from the Game Stop at 6300 West Charleston, it does not discuss any vehicles seen at the Game Stop robbery. Even if it did, omitted Statement 2 - "a green car four door was seen near the Game Stop" - does not necessarily mean that a green car was used in the robbery as a get-away vehicle. Its omission could not logically have had the effect of misleading the judge or undermining probable cause. An affidavit need only show facts adequate to support a finding of probable cause. *See Johns*, 948 F.2d at 606-607. The omission of facts rises to the level of misrepresentation only if the omitted facts "cast doubt on the existence of probable cause. *Id*. Here, the omission of Statements 1 and 2 does not cast such doubt.

Similarly, Smith fails to explain how Judge Williams was mislead by omitted Statements 3, 4, and 5. These Statements are apparently from witnesses of two of the twenty-one robberies under investigation. They indicate that the race of the suspects is White or Hispanic rather than African-American. Neither the Thai Taste robbery nor the Quiznos robbery is mentioned in the Sclimenti Affidavit. The Sclimenti Affidavit does not mention the race of any suspects until it discusses the surveillance of Smith and Merritte after they had become the focus of the investigation. From that point forward, the Sclimenti Affidavit discusses, in great detail, the results of the surveillance of the Smith and Merritte prior to their arrest for the attempted murder of Mr. Gates. *See* Application for Telephonic Search Warrant, Def.'s Mot. #134-1, Ex. A, 6. The Sclimenti Affidavit does indicate that Smith matched the "general description and physical characteristics of one of the robbery suspects." *Id*. at 5. The identification of a white person as a suspect in the Thai Taste robbery in Statement 4 does not exclude the possibility that Smith and Merritte were involved in the robbery. Nor does the identification of an African American suspect along with a Hispanic suspect, in

Statement 5, exclude the possibility that Smith was involved in the robbery. Finally, the fact that "a white guy was also observed near the Game Stop" in Statement 3 does not necessarily mean that a white person was involved in the robbery. Accordingly, the omission of Statements 3, 4, and 5 does not cast doubt on the existence of probable cause. In conclusion, because the Court finds that all five alleged omissions are not misleading, were not recklessly or intentionally omitted, and do not affect the probable cause determination, no *Frank*s hearing is warranted. As a result, suppression of the evidence at issue is not justified.

## II. The Sufficiency of Evidence to Support Probable Cause

Smith next argues that there was only tenuous and speculative information to support probable cause to search the Honda, Smith's residence (3032 Beaufort Court), and to take the Buccal Swab because the information in the Sclimenti Affidavit did not connect the place to be searched with the series of robberies. The Government responds that there is sufficient probable cause, and even if there is not, the evidence in the Honda Accord would have been inevitably discovered. Further, the Government alleges that the good faith exception to the exclusionary rule would apply.

As previously discussed, a search warrant may only issue upon a showing to a neutral magistrate that probable cause exists to support the proposed search. The Supreme Court has described "probable cause" as a "fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 at 238. The magistrate judge must be provided with sufficient facts from which he may draw the inferences and form the conclusions necessary to a determination of probable cause. *Giordenello v. United States*, 357 U.S. 480, 485-86 (1958). Probable cause is to be determined on the basis of the "totality-of-the-circumstances." *Gates*, 462 U.S. at 230. The issuance of a search warrant is upheld "if the issuing judge 'had a substantial basis' for concluding [that] probable cause existed based on the totality of the circumstances." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009).

As discussed above, even accepting Smith's claims of a false statement and misleading omissions, there is ample probable cause to believe evidence of the robberies will be found in the Honda Accord and Smith's residence. *See United States v. Garza*, 980 F.2d 546, 551 (9th Cir.

1992) ("based on the nature of the evidence and the type of offense, a magistrate may draw reasonable inferences about where evidence is likely to be kept."). Smith has not made the required showing to warrant a *Franks* hearing on those issues. Further, the buccal swab could be used to determine Smith's DNA and, thereafter, in an attempt to connect Smith to other evidence of the robberies. Under these circumstances, the Court concludes that Judge Williams had a substantial basis for determining there was probable cause to support the searches at issue and his decision is entitled to substantial deference.[3] Accordingly, the Court finds that Smith has failed to establish that the evidence was speculative, inaccurate, and of a tenuous nature to support a probable cause determination and warrant suppression of the evidence at issue.

## <u>III. Staleness of the Evidence</u>

Smith next argues that the evidence to search the Honda Accord was stale because three months had passed since the robbery in which the Honda Accord was allegedly used to flee the scene. As a result, Smith contends that it was not likely that evidence of the crimes would be found there. The Government disagrees, arguing that the series of robberies was on-going and the evidence was not stale due to the continuing investigation.

Staleness must be evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought. *See United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991). The test for judging the timeliness of a search warrant is whether there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises. *United States v. Gann*, 732 F.2d 714, 722 (9th Cir. 1984). Here, the Sclimenti Affidavit indicates that investigation into the series of robberies was ongoing. Further, it notes that the most recent robbery had been committed on April 27, 2010, only three weeks before the application was presented to Judge Williams. A few days prior to the application being signed, Smith and Merritte had been observed casing similar businesses, which reasonably suggests that the series of robberies might be ongoing. Among other items, handguns, gloves, and masks were used

---

[3] Based on this finding that probable cause existed to justify the May 19, 2010 search warrant, the Court finds it unnecessary to address the Government's alternative arguments that the "good faith" or "inevitable discovery" exceptions would apply.

in the robberies. "One may infer that equipment acquired to accomplish a crime will be kept for some period of time." *United States v. Hernandez*, 80 F.3d 1253, 1259 (9th Cir. 1991) (drugs retained in a toolbox from sales in the past), *overruled on other grounds by Muscarello v. United States*, 524 U.S. 125 (1998); *see also, United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991) (where "the evidence sought is of an ongoing criminal business . . . greater lapses of time are permitted if the affidavit shows the probable existence of the activity at an earlier time"); *United States v. Vaandering*, 50 F.3d 696, 700 (9th Cir. 1995) (even when an affidavit contains some stale information, probable cause is not lacking where "the older information was coupled with recently obtained information."). Detective Sclimenti believed, based upon his experience, that there is a likelihood that evidence related to the robberies would be found inside Smith's residence as well as the Honda Accord. The Court finds this to be a reasonable inference to be drawn based on the ongoing investigation. *See e.g. United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) (a magistrate may "draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."). Accordingly, the Court finds that the information in the Sclimenti Affidavit was not so stale as to make it unlikely that evidence of the robberies would be found in the places searched - the Honda Accord and Smith's residence. Therefore, the Court finds that Smith has failed to establish that stale evidence is a grounds for suppressing the evidence at issue.

**CONCLUSION**

In conclusion, Smith has failed to meet his burden of demonstrating that he is entitled to a *Franks* evidentiary hearing regarding the Sclimenti Affidavit. Although Smith specified the alleged false statement or misleading omission, he failed to provide detailed proof that the alleged statement or omission was done intentionally or recklessly, or explain why the alleged omissions were misleading, or establish that the omissions were material to the probable cause determination. The Court finds that the Judge Williams had a substantial basis for concluding that probable cause existed to issue the search warrant. Accordingly, the Court finds that Smith are not entitled to a *Franks* hearing.

Based on the foregoing and good cause appearing therefore,

**RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that Defendant Phillip Smith's Motion to Suppress (#134) be **denied**.

**NOTICE**

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 7th day of August, 2014.

**C.W. Hoffman, Jr.**
**United States Magistrate Judge**