UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff<br><br>v.<br><br>Phillip Smith and Develle Rural Merritte,<br><br>   Defendants | 2:11-cr-00058-JAD-CWH<br><br>**Order Overruling Objections to Findings and Recommendation, Adopting R&R, and Denying Motion to Suppress and for *Franks* Hearing**<br><br>[ECF 199, 205, 206] |

Phillip Smith and Develle Merritte stand charged with multiple counts of robbery-and firearm-related offenses stemming from a series of 2010 robberies dubbed the "bandana robberies."[1] Smith moves to suppress evidence seized during the May 2010 warranted search of his home and car,[2] arguing that the application supporting the warrant contains false or omitted facts. He also moves under *Brady v. Maryland*[3] to suppress video-surveillance evidence from two of the robberies, contending that the government had a duty to produce flawless surveillance footage, but missing frames and a malfunctioning time stamp caused the government to breach that obligation. Magistrate Judge Hoffman considered the motion and recommends that I deny it.[4] Smith objects.[5] Having reviewed the motion *de novo*, I adopt Judge Hoffman's findings and conclusions, overrule Smith's objections, and deny Smith's motion to suppress.

## Background

In 2010, the Las Vegas Metropolitan Police Department (Metro) investigated a series of robberies that occurred between January and April at several businesses in Las Vegas. Metro

---

[1] ECF 53.

[2] ECF 199. I find this motion suitable for disposition without oral argument. Nev. LR 78-2.

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

[4] ECF 205.

[5] ECF 206.

identified a specific Honda Accord as the vehicle involved in the robbery of a Subway store during that time.[6] Over the next several weeks, detectives conducted physical surveillance of that Honda Accord, which they discovered to be associated with Smith.[7] During the course of that surveillance, detectives observed Smith pick Merritte up in the Honda Accord and then watched the pair "case" several businesses like those targeted by the bandana robbers.[8]

On May 18, 2010, while conducting physical surveillance on Smith, detectives received a home-invasion robbery call from an apartment complex that Smith and Merritte had just left.[9] Detectives arrested Smith and Meritte following a high-speed car chase that ended when the Honda Accord, driven by Smith, collided with another vehicle.[10]

Shortly after the arrests, during the early morning hours of May 19, 2010, Detective Michael Sclimenti telephonically applied for a search warrant.[11] Nevada's Eighth Judicial District Judge Timothy Williams issued the warrant, which allowed law enforcement to obtain buccal swabs from Smith and to search the Honda Accord and Smith's residence.

In May 2014, Smith argued that the search warrant was issued without probable cause, and he moved for a *Franks* hearing and to suppress the fruits of the warranted search.[12] Magistrate Judge Hoffman issued 15 pages of detailed findings and recommendations rejecting Smith's claim that Sclimenti's warrant application contained material misrepresentations and recommending Smith's motion be denied.[13] I adopted Judge Hoffman's findings and conclusions, overruled Smith's

---

[6] ECF 134-1 at 5.

[7] *Id.* at 5–6.

[8] *Id.* at 6–8.

[9] *Id.* at 8–9.

[10] *Id.* at 9.

[11] ECF 134-1.

[12] ECF 134.

[13] ECF 157.

objections, found the warrant supported by probable cause, and denied Smith's motion.[14]

The instant motion is Smith's second sufficiency challenge to the probable cause supporting this warrant.[15] Again Smith contends that Sclimenti's sworn statement contained material misrepresentations and that a *Franks* hearing is dictated. But this time he targets a single point in Sclimenti's telephonic affirmation—the transcript of which spans 17 pages—where Sclimenti notes that Smith's gray Honda Accord was seen fleeing the area through the Subway store's drive-thru "[d]uring" the robbery and that "[t]he incident was captured on video surveillance."[16] Smith argues that the still shots from the video surveillance all show the same, never progressing time stamp, but this broken-time-stamp fact was omitted from Sclimenti's statement, rendering his warrant application false and misleading.[17] Smith alternatively argues that the Subway surveillance-video photos—and surveillance video from a Papa John's robbery that has missing time gaps—must be suppressed under *Brady* because these items have "no evidentiary value and [are] essentially lost."[18]

Magistrate Judge Hoffman thoughtfully considered the motion, the government's response, and Smith's reply.[19] He reiterated this court's previous conclusion that the totality of circumstances supported Judge Williams's probable-cause finding and found that the time-stamp argument does not undermine that conclusion.[20] Judge Hoffman further found that Smith has provided "no factual or legal basis to support his claim that the gaps in the surveillance video contain" exculpatory material that the government was obligated to produce under *Brady*. He thus recommends that I deny Smith's

---

[14] ECF 180. I incorporate by reference the findings and conclusions in my previous order.

[15] ECF 199.

[16] *Id.* at 7; ECF 134-1 at 5.

[17] ECF 199 at 2.

[18] *Id.* at 8.

[19] ECF 205 at 1 (citing ECF 199, 200, 201).

[20] *Id.* at 3–4.

motion to suppress.[21] Smith objects that "without an accurate timestamp" on the Subway surveillance photographs, there is no evidence that the suspect vehicle was at the Subway at the time of the robbery.[22] And he argues that "the government had a duty to produce complete Papa Johns' [sic] videos, and Subway video still-shots with accurate time-stamps" and its failure to do so requires this evidence be suppressed.[23]

## Discussion

### A. Standards of Review

28 USC § 636(b)(1)(A) permits a U.S. Magistrate Judge to "hear and determine any pretrial matter pending before the court, except a motion . . . to dismiss or quash an indictment or information made by the defendant." "Within 14 days after being served with a copy of the [magistrate judge's] recommended disposition . . . a party may serve and file specific written objections to the proposed findings and recommendations. . . . Failure to object in accordance with this rule waives a party's right to review."[24]

A district court reviews objections to a magistrate judge's proposed findings and recommendations *de novo*.[25] "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[26] I review Magistrate Judge Hoffman's report and recommendation *de novo*.

### B. Smith is not entitled to a *Franks* hearing on the Sclimenti affidavit.

The Fourth Amendment to the United States Constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the

---

[21] ECF 205 at 5.

[22] ECF 206 at 5.

[23] *Id.* at 9.

[24] 28 USC § 636(b)(1).

[25] *Id.*

[26] *Id.*

place to be searched, and the persons or things to be seized."[27]  Although a duly issued warrant is presumed valid, under *Franks*, a defendant may obtain an evidentiary hearing to ascertain whether it was supported by probable cause.[28]  To obtain a *Franks* hearing, the defendant must make a preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information.[29]  "To justify a hearing, a defendant must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof."[30]  "The effect of misrepresentations and omissions on the existence of probable cause is considered cumulatively."[31]

Smith contends that he is entitled to a *Franks* hearing on the Sclimenti application based on the following averment made under oath:

> On February 13, 2010[,] under LVMPD Event #100213–1095, an armed robbery occurred at the Subway, located at 6150 West Charleston, Las Vegas, Nevada 89107.  During that particular event a suspect vehicle, 2004 gray Honda Accord California plate Adam, Paul, Mary, 6-0-7, was seen fleeing the area through the drive through.  The incident was captured on video surveillance.[32]

Smith explains that discovery has revealed that each still-shot from the Subway-store video contains exactly the same time stamp: "Drive Thru 2/13/2010 8:14:59 AM."[33]  "Because the timestamp fails to change, as it should, from frame to frame, there is no way to know what time the video depicts."[34]

---

[27] U.S. CONST. AMEND. IV.

[28] *Franks*, 438 U.S. at 155–56.

[29] *Id.*

[30] *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008) (citation omitted).

[31] *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985) (citation omitted).

[32] ECF 199 at 7; ECF 134-1 at 5.

[33] ECF 199 at 2.

[34] ECF 206 at 6.

Thus, Smith argues, "the statement regarding the video has no credible value without knowing what time it was taken. And without placing the vehicle at the scene 'during' the robbery[,] there is no probable cause."[35]

Judge Hoffman found that Smith did not produce any information supporting his claim that Sclimenti's failure to include the correct time-stamp in the application was reckless or intentional.[36] Judge Hoffman also found that the omitted information does not negate the existence of probable cause—an issue thoroughly addressed in this court's previous order.[37] I agree with Judge Hoffman on both points.

First, Smith has not shown that Sclimenti intentionally or recklessly made a misleading omission by failing to include the broken time-stamp information in the warrant application. "Only if the omitted facts cast doubt on the existence of probable cause do they rise to the level of misrepresentation."[38] Sclimenti did not aver that the Subway robbery occurred at a particular time of day, so the omission was not misleading. And even if Sclimenti had indicated in the application that the surveillance video's time-stamp was defective, the application is rife with additional evidence that supports Judge Williams's probable-cause determination.

The Subway surveillance-video photos of the Honda Accord are just one small piece of the probable-cause puzzle that supported this warrant application (which spans 17 transcribed pages) and tied the Honda Accord and Smith to this string of robberies. As Sclimenti's heavily detailed application[39] revealed, detectives had been conducting surveillance on the Honda Accord for almost three weeks before the warrant issued; Smith's MySpace page displayed photos of him standing next to a gray Honda Accord of the same make and model; and Smith was observed driving a 2004 Honda

---

[35] ECF 206 at 6.

[36] ECF 205 at 4.

[37] *Id.* (citing ECF 157 at 6–9).

[38] *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992) (internal citation omitted).

[39] ECF 134-1.

Accord.[40]  Sclimenti further averred that, during that period, detectives observed Smith and Merritte case several businesses like those commonly targeted by the bandana robbers.[41]  Sclimenti also relayed that Merritte matched the description of one of the suspects in three of the previous robberies and that he wore a hat with the same logo.[42]  Smith was observed picking Merritte up on May 11, 2010, in the same Honda Accord shown in the Subway footage.[43]  Finally, on May 18, 2010, detectives were tracking Smith when they received a robbery call from an apartment complex Smith and Merritte had left just two minutes prior.[44]  The caller stated that he had just been robbed and shot in the chest by two men—who matched Smith's and Merritte's descriptions.[45]  Officers were then dispatched to stop the very same Honda shown in the Subway surveillance photos and arrested Smith and Merritte following a high-speed chase.[46]

       Smith has not even attempted to explain how Sclimenti's telephonic warrant application—that contains information gathered from weeks of surveillance, including detailed allegations of suspicious activity culminating in a home-invasion robbery—would have been undermined had the detective noted that the time stamp on the Subway surveillance photos was faulty.  By the time Detective Sclimenti sought this search warrant, he had far more information to tie Smith to the Honda Accord than merely the Subway-store surveillance.  The time-stamp omission does not undermine Judge Williams's determination that law enforcement had probable cause for the warrant.

---

[40] *Id.* at 6.

[41] *Id.* at 6.

[42] *Id.* at 5.

[43] *Id.* at 7.

[44] *Id.* at 9.

[45] *Id.* at 10.

[46] *Id.*

**C.     Smith has not shown a *Brady* violation has occurred.**

Smith's second objection is that the prosecution should be prevented under *Brady* from introducing the Papa John's and Subway surveillance evidence because it is incomplete or erroneous; "the government had a duty to produce complete Papa Johns' [sic] videos[] and Subway video still-shots with accurate time-stamps" and "failed in that duty."[47]

*Brady v. Maryland* requires the government to disclose information that is favorable to the defendant and that is material either to guilt or to punishment.[48] The government is only required to disclose information to the defense "[i]f a federal prosecutor has knowledge of and access to [the] exculpatory information."[49]

The government has explained that the Papa John's surveillance video was recovered from the store and that it provided Smith with "an exact copy of what law enforcement took from the business."[50] Thus, Smith has not established that the government has additional frames of video surveillance that it has failed to provide Smith. As Judge Hoffman noted in his report and recommendation, "the government cannot provide what it does not possess."[51] The government could only provide the Papa John's surveillance footage it received from the store; and if the Subway surveillance photographs bear an inoperable time stamp, the government cannot be held accountable for this malfunctioning equipment.

Smith argues that this finding "ignores the notion that the government was required to learn of any favorable evidence known to the others acting on the government's behalf."[52] But *Brady* and its progeny do not require the government to obtain and disclose information that is not already in its

---

[47] ECF 206 at 9. Sclimenti did not specifically discuss the Papa John's robbery in his application, so it had no bearing on Judge Williams's determination of probable cause.

[48] *Brady*, 373 U.S. at 86.

[49] *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989).

[50] ECF 200 at 9.

[51] ECF 205 at 5.

[52] ECF 206 at 7–8.

actual or constructive possession.[53] The Ninth Circuit has held that the "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody, or control of any federal agency participating in the same investigation of the defendant."[54] The government has explained that it turned over the Papa John's video recovered from the store in its entirety, and Smith only speculates that the government may not be telling the truth.[55] Accordingly, I agree with Judge Hoffman's findings and conclusions that the government neither committed a *Brady* violation nor failed to produce exculpatory evidence.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Smith's objections to Judge Hoffman's Report and Recommendation **[ECF 206] are OVERRULED;**

2. Judge Hoffman's Findings and Recommendation **[ECF 205] are adopted** in their entirety; and

3. Smith's Motion to Suppress and Request for Evidentiary Hearing **[ECF 199] is DENIED.**

Dated this 14th day of October, 2015

_____
Jennifer A. Dorsey
United States District Judge

---

[53] *See United States v. Flores*, 540 F.2d 432, 437 (9th Cir. 1976) (noting that the Government is under no obligation to sift through public records to which the defense has equal access); *United States v. Combs*, 267 F.3d 1167, 1173 (10th Cir. 2001) (explaining that *Brady* does not compel the government to obtain evidence from third parties that are not also federal government agencies).

[54] *Bryan*, 868 F.2d at 1036.

[55] *See* ECF 206 at 7 ("this finding assumes that law enforcement never possessed complete Papa Johns' footage and accurately time-stamped video, simply because law enforcement says so.").